UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARIN B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C25-681-BAT <br><br> **ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff appeals the denial of her application for Disability Insurance Benefits. She contends the ALJ harmfully erred by (1) failing to give clear and convincing reasons for discounting plaintiff's testimony; (2) failing to evaluate the lay testimony of plaintiff's spouse; and (3) failing to give legally sufficient reasons for discounting the opinions of state agency medical consultant Vincent Gollogy, Ph.D., and treating nurse practitioner, Danielle Waldron. Dkt. 10. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 53 years old, completed two years of college, and has worked as a massage therapist. Tr. 75, 81. In 2020, she applied for benefits, alleging disability as of March

1  31, 2020. Tr. 75. After her applications were denied initially and on reconsideration, Tr. 55–82,
2  the ALJ conducted a hearing and found plaintiff not disabled in a 2022 decision, Tr. 12–54. The
3  Court reversed and remanded the 2022 decision because the ALJ erred in (1) discounting
4  plaintiff's testimony by referring to relatively normal mental status examinations and without
5  discussing or addressing treatment notes that corroborated plaintiff's allegations; (2) discounting
6  the lay testimony of plaintiff's husband for the same reasons; and (3) discounting the opinions of
7  state medical consultant Dr. Waldron and ARNP Waldron for the same reasons. Tr. 842–49. In
8  doing so, the Court noted "while later treatment notes indicate an improvement in Plaintiff's
9  symptoms, *see, e.g.*, AR 605, 610, 682, 700, 724, 730, the ALJ did not discuss this improvement
10 or discount Plaintiff's testimony on that basis." Tr. 847. On review, the Court was obligated to
11 rely on the reasons articulated by the ALJ and could not fashion its own reasons to affirm. *Id.*
12 (citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)).
13      On remand, the ALJ held a 2024 hearing and issued a 2025 decision. Tr. 781–811. The
14 ALJ found plaintiff met the insured status requirements through December 31, 2024, and has not
15 engaged in substantial gainful activity since the alleged onset date of disability of March 21,
16 2020. Tr. 766. The ALJ determined plaintiff has the severe impairments of migraine headaches,
17 depressive disorder, and anxiety disorder. Tr. 766–67. The ALJ found none of plaintiff's
18 impairments, alone or in combination, met or medically equaled a listed impairment. Tr. 767–68.
19 The ALJ determined plaintiff has the residual functional capacity ("RFC") to perform a full
20 range of work at all exertional levels but with the following non-exertional limitations: plaintiff
21 is limited to performing simple tasks with no more than occasional interaction with the general
22 public, coworkers, and supervisors; and plaintiff can adapt to occasional changes in the
23 workplace. Tr. 768. The ALJ found although plaintiff cannot perform any past relevant work, she

can perform other jobs that exist in significant numbers in the national economy. Tr. 775–76. The ALJ therefore found plaintiff not disabled. Tr. 776. Plaintiff appealed this final decision directly to this Court.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court finds the ALJ did not cite specific, clear and convincing reasons to discount plaintiff's testimony about her inability to maintain consistent attendance and inability to maintain full-time work without interruption from psychological symptoms, which in turn led to the ALJ's decision to discount the lay testimony and the opinions of Dr. Gollogy and ARNP Waldron as unsupported by substantial evidence. The Court declines, however, to remand for an award of benefits because the record contains ambiguity about the extent, frequency, and duration of these limitations, and the ALJ failed to evaluate over 200 pages of clinical notes. On remand for further administrative proceedings, the ALJ shall supplement the record via updated medical opinions and/or expert medical testimony about the extent of plaintiff's ability to engage in fulltime work is disrupted by absences or workplace interruptions based on psychological symptoms, and about whether such limitations continue or have improved to a meaningful extent. The ALJ shall hold a new hearing, admit any supplemental evidence, and issue a new decision that also considers whether autism spectrum disorder ("ASD") constitutes a severe impairment at step two of the sequential evaluation.

**1. Plaintiff's Testimony**

Plaintiff contends the ALJ failed to cite specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of her mental impairments. *See Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). The Court agrees because the ALJ did not adequately examine and reconcile the evidence consistent with plaintiff's testimony that mental impairments would interfere with her ability to perform fulltime work without an unacceptable number of absences, as well as to remain on-task during a typical workday or workweek.

In the earlier remand order, the Court found the ALJ had harmfully erred in discounting plaintiff's testimony "by only relying on portions of treatment notes that supported finding plaintiff not disabled and failing to discuss or address treatment notes that corroborated Plaintiff's allegations." Tr. 848. Here the ALJ committed the same error by describing a record that eschews discussion of those aspects of the record that contradict a conclusion plaintiff's mental condition has been stable from the outset and consistently improved from there. Tr. 769–71. In doing so, the ALJ failed to discuss over 200 pages of medical notes from plaintiff's treating psychiatric provider ARNP Waldron from July 2022 to May 2024, Tr. 1058–1293, nearly two years of treatment, including a period of decreased functional status that plaintiff later described as having "lost a whole year" to depression and anxiety, Tr. 1350.

Plaintiff testified despite regular use of medications, she would be absent from work about one time per week due to depression and anxiety, would take clonazepam as needed but did so about once a day for severe anxiety, and would get so overwhelmed she sometimes left work in the middle of the day. Tr. 38, 44, 791, 80. In 2021, treating psychiatric provider ARNP Waldron opined plaintiff would be absent from work once per week, and plaintiff's moderate limitation in concentrating, persisting, or maintaining pace meant she would be off task 25% or

1  more during a workday, would have difficulty sustaining an ordinary routine and regular
2  attendance at work, and would have difficulty working a full day without needing more than the
3  allotted number or length of rest periods during the day. Tr. 546–47. Although reviewing
4  psychologist Dr. Gollogy opined ARNP Waldron overestimated plaintiff's limitations, Dr.
5  Gollogy nonetheless agreed plaintiff would have moderate restrictions in the ability to complete
6  a normal workday and workweek without interruptions from psychologically based symptoms
7  and to perform at a consistent pace without an unreasonable number and length of rest periods.
8  Tr. 80. Also consistent with ARNP Waldron, Dr. Gollogy concluded plaintiff would have
9  occasional concentration, pace, and persistence interruptions due to psychological symptoms and
10 that plaintiff "may miss days of work intermittently." Tr. 80. Plaintiff's therapist from 2019 to
11 2021, Karen S. Keeton, M.A., LM.H.C., confirmed plaintiff's testimony was consistent with her
12 statements during treatment. Tr. 626–27. Ms. Keeton noted: "The client reports having difficulty
13 maintaining focus and concentration most days, and I have observed this when attempting to
14 teach some mindfulness techniques and anxiety management strategies." Tr. 626.
15      The ALJ acknowledged plaintiff's statements to treatment providers was consistent with
16 her testimony but discounted the severity of her symptoms as "inconsistent with her statements
17 of improvement and providers consistent notation of stability and improvement supporting a
18 higher level of functionality tha[n] alleged." Tr. 771 (citing exhibits 10F (Tr. 557–77), 12F (Tr.
19 625–43), 15F (Tr. 670–81), 16F (Tr. 682–749), 18F (Tr. 971–78), 23F (Tr. 1294–1397), 24F (Tr.
20 1398–1404)). The ALJ cited examples of this consistent stability and improvement: primary care
21 notes from 2020 that showed more stable mental status examinations and a suggestion that "at
22 least some of the claimant's anxiety at the time was due to the COVID-19 pandemic, which
23 resulted in elevate anxiety for many," Tr. 769; that after a period showing in which mental health

records showed increased symptoms of anxiety and depression and a corresponding increase in dosage and frequency of medication, primary care records in 2021 noted, "she's having a bit of anxiety and stress, but in general psych meds are doing well, managed by Danielle Waldron," Tr. 770 (citing Tr. 567–68) (internal quotation marks removed, typo corrected); a September 2021 therapy session referring to some improvement with addition of another medication, Tr. 770 (citing Tr. 642); March and April 2022 primary care records showing stable mental status exams, Tr. 770 (citing Tr. 670–71, 675–78); a June 2022 appointment in which ARNP Waldron noted, "Clinically [the claimant] is stable and tolerating current regimen will with sustained improvement in target symptoms," Tr. 770 (citing Tr. 743–47) (internal quotation marks removed); a January 2024 neuropsychological consultative examination by Lee A. Kearns, Psy.D., in which plaintiff's "anxiety in the context of exam is consistent with prior anxiety associated with significant events,"[1] Tr. 770; 2024 primary care records noting that plaintiff was a "well appearing woman in no acute distress well groomed, well dressed, makes good eye contact, no agitation or sedation, speech fluent," Tr. 771 (citing Tr. 1400); and 2024 records from ARNP Waldron showing that plaintiff had intact memory, concentration, insight, and judgment, had better control over anxiety and panic symptoms with a new medication, and remained "stable and tolerating current regiment well with sustained improvement in target symptoms," Tr. 771 (citing Tr. 1299, 1308, 1315).

---

[1] The ALJ did not, however, indicate how current events or the mere occurrence of the exam was 'consistent with prior episodes of anxiety associated with significant events.'" Tr. 770. Dr. Kearns did not suggest that plaintiff's anxiety was being triggered by a significant event. In fact, Dr. Kearns observed plaintiff was anxious, had taken her prescribed psychostimulant prescription, and the exam was "believed to be a valid reflection of her cognitive and emotional functioning in the domains assessed." Tr. 974. Dr. Kearns concluded, "[D]espite treatment, Depression (311) and Anxiety (300.00) appear to remain clinically problematic." Tr. 978.

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 6

As in the reversed 2022 decision, the ALJ harmfully erred here by failing to state specific, clear and convincing reasons for omitting a meaningful discussion of evidence that supports plaintiff's testimony her symptoms of depression and anxiety would interfere with her abilities to maintain workplace attendance and work a full day without an unacceptable level of disruptions. For example, the ALJ did not cite or address ARNP Waldron's clinical notes for the period July 15, 2022 to May 31, 2024. Tr. 1058–1293. On May 17, 2024, ARNP Waldron saw plaintiff as a psychiatric follow up for nightmares, increased depression, and "mood melt downs," with the current psychological symptoms of irritability, mood lability, excessive worrying, poor concentration, and not sleeping. Tr. 1209. Plaintiff stated her primary concern was anxiety, which she rated at 8 out of 10 with 10 being the worst, dreaded leaving home "[e]ven to go a block away," and cancelled a post-operative appointment at the last moment for that reason. *Id.* (internal quotation marks removed). She continued to struggle with daily motivation and felt depressed most days. *Id.* Plaintiff reported that clonazepam was no longer effective for her anxiety but wanted to continue taking it because this was "better than not having it." *Id.* (internal quotation marks removed). With increasing depression symptoms, plaintiff "has difficulty with starting and completing tasks." *Id.* Nonetheless, "[m]ood reports some improvement since last appointment." *Id.* Although ARNP Waldron included the same language included in nearly all of her assessments—"Clinically [plaintiff] is stable and tolerating current regimen well with sustained improvement in target symptoms"—her more specific observations painted a contradictory picture: "[Plaintiff] is experiencing increased anxiety, and has increased difficulty leaving the home. . . . For now, we will increase Prazosin to 2 mg daily and continue 1 mg nightly. Adderall IR will be switched to XR 20 mg daily. Will resume 300 mg of Wellbutrin as this is what [plaintiff] has been taking. Refill of Saphris for acute agitation/anxiety/panic." Tr.

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 7

1214. The unexamined notes from ARNP Waldron contain numerous references that substantiate plaintiff's testimony her mental limitations affected her abilities to maintain sufficient attendance or to complete workdays or workweeks without unacceptable disruptions. *See, e.g.*, Tr. 1217 (reporting increased depression and "mood melt downs" despite improvement since last appointment), 1224 (reporting increased depression and "mood melt downs"), 1231 (reporting increased depression and "mood melt downs," as well as intermittent passive suicidal ideation and "worst days of my life since we last met," and "can't think straight, literally want to die"), 1237 (reporting increased depression and "mood melt downs," as well as anxiety at 10 out of 10 and depression at 8 out of 10), 1252 (reporting continued, very difficult mood and anxiety symptoms and "[h]as not been able to complete or engage in tasks without feeling tired, or unmotivated or anxious").

With mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. Although "[i]t is an error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," that is what the ALJ did here when determining that selective medical notes from ARNP Waldron combined with benign mental status examinations during primary care visits constituted proof positive that symptoms of depression and anxiety would have no impact on plaintiff's abilities to attend work or to complete a workday/workweek. *Id*. Plaintiff is correct to note that ARNP Waldron typically included boilerplate language about plaintiff being "stable and tolerating current regiment well with sustained improvement in target symptoms," before proceeding to indicate with more specificity that plaintiff was actually enduring greater

difficulties and reduced capacity, such as noting that "[r]ecent increase in anxiety has caused some difficulty in [plaintiff's] ability to complete activities of daily life and she has increasing difficulty leaving the house." Tr. 1265. ARNP Waldron referred to such "stability" and "sustained improvement," even when reporting that plaintiff reported worsening anxiety over several months with anxiety lasting all day and rating as a 9 out of 10. Tr. 1271. Moreover, the ALJ did not provide specific, clear and convincing reasons for discounting the work impact of plaintiff's depression and anxiety when citing selectively to Dr. Kearns's neuropsychological testing and to primary care visits in which plaintiff's mental status exams were benign. Dr. Kearns's examination was paid for by plaintiff's health insurance company and so he was careful not to evaluate plaintiff's capacity to work. Tr. 979. Nonetheless, when queried about his examination results, Dr. Kearns noted the data supported significant depression and anxiety and that "the challenges we documented have clear negative impact on your ability to currently manage a competitive work environment although we did not have those specific discussions." *Id.* Similarly, that plaintiff was not actively disoriented during a primary care visit or found medications to be helpful do not contradict consistent statements made by plaintiff "she feels that she is barely making it, and does not feel she could ever return to work," Tr. 1403, or that she reported being unable to work though she "is trying to stay functional at home with ADLs," Tr. 1399.

      The Court finds the ALJ erred by failing to state specific, clear and convincing reasons for discounting plaintiff's testimony about the limiting effects of her psychological limitations on her capacity to maintain attendance at work and to complete a workday/workweek without significant interruptions. This error was harmful because the vocational expert testified that an employer would tolerate only five absences per year and being off task up to 10 percent. Tr.

808–09. On remand, the ALJ should supplement the record to evaluate whether plaintiff retains the capacity to maintain fulltime work with fewer than five absences per year and being off task less than 10 percent of the time, contrary to the limitations set forth in ARNP Waldron's 2021 opinion; and, if so, on what dates plaintiff did or did not retain the capacity to perform such fulltime work.

### 2. Lay Testimony by Plaintiff's Husband

Plaintiff contends the ALJ violated the scope of the remand by not articulating why the lay testimony of plaintiff's husband was discounted. Dkt. 10, at 11. The Court directed the ALJ to reevaluate the lay testimony on remand. Tr. 849. The ALJ took judicial notice of having evaluated the lay testimony but declined to engage in any evaluation of the testimony of plaintiff's husband. Tr. 775. Given this is the second remand of this matter, the Court directs the ALJ to articulate the reasons for accepting or rejecting the lay testimony of plaintiff's husband.

The Ninth Circuit has not yet decided whether the new regulations regarding medical evidence, 20 C.F.R. §§ 404.1520c, 416. 920c, affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. *See Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006). Some courts have concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g., Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for discounting a lay witness's testimony."); *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the

Ninth Circuit has traditionally required."). The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Devan G. v. Commissioner of Soc. Sec.*, 2025 WL 1640176 (N.D. Cal. June 10, 2025), at *10; *Tracy Q. v. Kijakazi*, 2024 WL 706963, at *8 (D. Or. Feb. 21, 2024), at *; *Jerald H. v. Commissioner of Soc. Sec.,* 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Commissioner of Soc. Sec. Admin.,* 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi,* 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi,* 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

To the extent the ALJ rejected the testimony of plaintiff's husband for the same reasons articulated for rejecting plaintiff's testimony, the ALJ harmfully erred by failing to adequately examine and reconcile the evidence that mental impairments would interfere with her ability to attend fulltime work without an unacceptable number of absences, as well as to complete a workday or workweek. Given that the ALJ has twice failed to support the rejection of lay testimony with substantial evidence, the Court makes clear that the scope of remand includes a requirement that will ensure the ALJ's decision will not run afoul of current and future Ninth Circuit decisions on the articulation requirement for lay testimony. On remand, the Court directs the ALJ to articulate the reasons for accepting or rejecting the lay testimony of plaintiff's husband.

### 3. Medical Opinions by Dr. Gollogy and ARNP Waldron

Plaintiff contends the ALJ failed to provide legally sufficient reasons for discounting the 2021 medical opinions of Dr. Gollogy and ARNP Waldron. The Court agrees.

The ALJ discounted ARNP Waldron's 2021 opinion because she failed to offer sufficient narrative in support of the checkbox form and relied on plaintiff's symptomatic reports; and

ORDER REVERSING THE COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 11

1  ARNP Waldron's opinion was inconsistent with the longitudinal record that showed providers'
2  consistent notations of stability and improvement were greater than alleged by plaintiff,
3  including statements in ARNP Waldron's 2024 notes. Tr. 772–73. The ALJ discounted Dr.
4  Gollogy's opinion because he did not examine plaintiff and did not review the updated record;
5  and the longitudinal record showed providers' consistent notations of stability and improvement
6  were greater than alleged by plaintiff. Tr 772. The ALJ did not provide legally sufficient reasons
7  for discounting Dr. Gollogy's and ARNP Waldron's opinions because of ALJ failed to
8  adequately assess and evaluate the abnormalities and difficulties that supported both opinions
9  and plaintiff's testimony. This harmful error included a failure to analyze nearly two-years'
10 worth of ARNP Waldron's clinical notes showing symptoms of severe depression and anxiety.
11 Tr. 1058–1293.

12      The Court finds the ALJ did not support the decision to discount the 2021 opinions of Dr.
13 Gollogy and ARNP Waldron with substantial evidence.

14      **4. Autism Spectrum Disorder**

15      Neither party has argued the ALJ failed to examine whether plaintiff's diagnosis of
16 autism spectrum disorder ("ASD") constitutes a severe impairment at step two of the sequential
17 evaluation. Nonetheless, in his neuropsychological evaluation, Dr. Kearns unequivocally
18 diagnosed plaintiff with ASD and recommended plaintiff "work[] with a therapist who has
19 specific experience and training in assisting individuals in the autism spectrum." Tr. 978; *see* Tr.
20 979 (Dr. Kearns's follow-up statement "I clearly agree that there is significant mood distress
21 (plus the additional ASD diagnosis) that has an impact on your ability to function in a variety of
22 contexts (work being one of them)"). ARNP Waldron documented plaintiff's diagnosis for ASD,
23 Tr. 1386; and plaintiff's primary care providers acknowledged the ASD diagnosis, Tr. 1404.

Because this case is being remanded for further administrative proceedings, the Court directs the ALJ to evaluate whether plaintiff's ASD constitutes a severe impairment and what impact ASD might have on plaintiff's RFC.

### 5. Remand for Further Administrative Proceedings

Plaintiff contends this case should be remanded for an immediate award of benefits based on the credit-as-true standard. The Court finds this matter should be remanded for further administrative proceedings.

Under the Social Security Act, "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with* or *without* remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). Under the Ninth Circuit's credit-as-true rule, three elements must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. Nonetheless, when a claimant is otherwise entitled to an immediate award of benefits under the credit-as-true analysis, the Court has flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The Court finds the record is not fully developed such that further administrative proceedings would be useful. As discussed earlier, the ALJ has yet to meaningfully evaluate over two-hundred pages of ARNP Waldron's clinical notes. Furthermore, years have passed since ARNP Waldron's and Dr. Gollogy's 2021 opinions that plaintiff's symptoms from depression and anxiety might render her unemployable due to the frequency of absences and/or disruptions in the workday/workweek. Plaintiff's mental health history shows a waxing and waning of symptoms such that the ALJ should evaluate whether and for what time periods and duration plaintiff's depression and anxiety rendered her unable to attend fulltime work with fewer than five absences per year and/or caused her to be off task for more than 10% of the time during a typical workday/workweek. On remand, the ALJ should take any necessary action to complete the administrative record—including, if necessary, expert medical testimony and supplemental medical opinions—offer plaintiff a hearing, and issue a new decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall supplement the record via updated medical opinions and/or expert medical testimony about the extent, frequency, and duration plaintiff's ability to engage in fulltime work are disrupted by absences or interruptions based on psychological symptoms, and about whether such limitations continue or have improved to a meaningful extent. The ALJ shall hold a new hearing, admit any supplemental evidence, and issue a new decision that also considers whether autism spectrum disorder ("ASD") constitutes a severe impairment at step two of the sequential evaluation. Because the ALJ erred as discussed above, the ALJ shall also

reevaluate the testimony of plaintiff and lay witnesses, and the opinions of Dr. Gollogy and ARNP Waldron.

DATED this 7th day of November, 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge